UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| VISION CENTER NORTHWEST, INC., d/b/a Vision Values by Dr. Tavel, | ) ) ) |
| Plaintiff | ) ) |
| v. | ) CAUSE NO. 3:07-CV-183 RM ) ) |
| VISION VALUE, LLC, d/b/a Eyeglass Express, | ) ) ) |
| Defendant | ) |

## OPINION and ORDER

This case is before the court on the motion of Vision Center Northwest, Inc., d/b/a Vision Values by Dr. Tavel ("Dr. Tavel"), for summary judgment on the claims of the amended complaint and on the claims of the counterclaim, and on the motion of Vision Value, d/b/a Eyeglass Express ("Vision Value"), for summary judgment on the claims of the amended complaint and its own counterclaim. For the reasons that follow, the court denies Dr. Tavel's motion and grants in part and denies in part Vision Value's motion.

## Facts

Dr. Tavel and Vision Value both are in the business of offering vision services and products. Dr. Tavel opened his South Bend, Indiana, store in the Broadmoor Plaza in 1991 as "Vision Values by Dr. Tavel;" in 1996, the business

was renamed "Dr. Tavel." Eyeglass Express caught the attention of Dr. Tavel when that business changed its name to "Vision Value" in February 2007. Vision Value's store is located in Mishawaka, Indiana, eight miles or so from Dr. Tavel's South Bend location.

Dr. Tavel filed suit against Vision Value in April 2007, alleging unfair competition under the Lanham Act, 15 U.S.C. 1125(a), and trademark infringement and unfair competition under common law and Indiana statutory law.[1] Dr. Tavel moved for a preliminary injunction to prohibit Vision Value's use of the "Vision Values" mark. After a hearing, the court issued a preliminary injunction enjoining Vision Value from using "Vison Value" or "Vision Values" in any "signage, telephone directories, billboards, broadcast advertisements, newspaper advertisements, or as a corporate name, trademark, service mark, or assumed name." Opinion and Ord., Nov. 1, 2007, at 20. Dr. Tavel changed his store's name to "Vision Value$ by Dr. Tavel," and Vision Value filed a counterclaim for wrongful injunction.

In August 2007, Dr. Tavel obtained the rights to the mark "Vision Value$" from Luxottica, and in February 2008, Dr. Tavel filed an application with the Patent and Trademark Office to register the design mark "Vision Value$ by Dr. Tavel" and the word mark "Vision Value$." The design mark registration was

---

[1] Dr. Tavel's original complaint also contained a claim for federal trademark dilution, 15 U.S.C. § 1125(c), but that claim was dismissed and an amended complaint was filed on July 20, 2009. The summary judgment motions address the amended complaint's unfair competition and trademark infringement claims.

2

issued on March 24, 2009; the PTO has stayed consideration of the word mark registration based on an objection having been filed by Vision Value and the litigation pending in this court.

The discovery process in this case hasn't been a smooth one, but the on-going disputes between the parties and counsel that have resulted in numerous motions being filed aren't relevant to the court's consideration of the parties' summary judgment motions and so won't be recapped here. The motions are both ripe for review.

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The court must construe the evidence and all inferences that reasonably can be drawn from the evidence in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or

denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. Anderson v. Liberty Lobby, 477 U.S. at 248.

Cross-summary judgment motions don't imply that there are no genuine issues of material fact: "[p]arties have different burdens of proof with respect to particular facts; different legal theories will have an effect on which facts are material; and the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail without a trial." R. J. Corman Derailment Servs., LLC v. International Union of Operating Eng'rs, Local 150, 335 F.3d 643, 647-648 (7th Cir. 2003). The court isn't required to grant summary judgment for either side when faced with cross-motions. "Rather, the court is to evaluate each motion on its merits, resolving factual uncertainties and drawing all reasonable inferences against the movant." Crespo v. Unum Life Ins. Co. of America, 294 F. Supp.2d 980, 991 (N.D. Ind. 2003) (citations omitted); *see also* O'Regan v. Arbitration Forums, Inc., 246 F.3d 975, 983 (7th Cir. 2003) ("With cross-motions, our review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration is made."). Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008) (internal quotation and citation omitted).

## Dr. Tavel's Motion

Dr. Tavel seeks summary judgment on the claims of his amended complaint and on the claims of Vision Value's counterclaim. Dr. Tavel maintains summary judgment in his favor is proper because he has established that the mark "Vision Values" is valid and protectable and that Vision Value's unlawful use of the mark has caused actual confusion. He says, too, that his entitlement to judgment on his claims would necessarily result in entry of judgment in his favor on Vision Value's claims for wrongful injunction. Vision Value has objected to evidence relied upon by Dr. Tavel, and Dr. Tavel has moved to strike those objections, but because none of the objections affect the court's consideration of the motion, the objections and motion to strike the objections will be denied.

Count I of Dr. Tavel's amended complaint is a claim for unfair competition under 15 U.S.C. § 1125(a), which prohibits the use in commerce of "any word, term, name, symbol, or device" or "any false designation of origin" that is "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." Federal registration of a mark isn't a prerequisite to an action under §1125(a). *See* <u>TMT North America, Inc. v. Magic Touch GmbH</u>, 124 F.3d 876, 881 (7th Cir. 1997) ("Since the purpose of a trademark, whether federally registered or unregistered, is to designate the origin of goods, the infringement of

such a trademark is actionable under section [1125(a)], provided the other requirements of the section are met.").

Dr. Tavel alleges in Count II of the amended complaint that the same facts support his claims for trademark infringement and unfair competition under the common law and unidentified Indiana statutes.[2] Therefore, the same analysis will govern Dr. Tavel's claims of unfair competition and trademark infringement because they all turn upon the same law and facts. *See* Moseley v. V Secret Catalogue, Inc., 537 U.S. 418, 428 (2003) ("Traditional trademark infringement law is part of a broader law of unfair competition that has its sources in English common law, and was largely codified in the Trademark Act of 1946 (Lanham Act)." (internal citation omitted)); Indiana Cheer Elite, Inc. v. Champion Cheering Organization, LLC, No. 3:05-CV-125, 2005 WL 2219467, at *1 n.1 (N.D. Ind. Sept. 13, 2005) ("The analysis under the Lanham Act for . . . unfair competition also applies to claims for unfair competition under Indiana common law."); Felsher v. University of Evansville, 755 N.E.2d 589, 598 (Ind. 2001) ("Indiana courts have created a cause of action for unfair competition, defined as "the attempt to create

---

[2] Although Dr. Tavel hasn't identified any Indiana statute that forms the legal basis for his claim(s) in Count II, Indiana's Trademark Act, IND. CODE § 24-2-1 *et seq.*, addresses trademark infringement and provides "a system of state trademark registration and protection that is consistent with the federal system of trademark registration and protection under the Trademark Act of 1946. A judicial or an administrative interpretation of a provision of the federal Trademark Act may be considered as persuasive authority in construing a provision of this chapter." IND. CODE § 24-2-1-0.5. If, indeed, Indiana's Trademark Act is a statute upon which Dr. Tavel relies, recovery under the Act requires a certificate of registration from the Indiana Secretary of State. Dr. Tavel hasn't alleged or established that he has registered a mark in Indiana. *See* Felsher v. University of Evansville, 755 N.E.2d 589, 599 (Ind. 2001) ("Registration of the trademark with the office of the Secretary of State provides the registrant a remedy against the infringement of the registered trademark.").

confusion concerning the source of the unfair competitor's goods. This common law tort was historically considered a subspecies of the class of torts known as tortious interference with business or contractual relations." (internal citations omitted)).

To prevail on his claims, Dr. Tavel must prove, first, that he has a protectable mark, and, second, that the defendant's use of the mark is likely to cause consumer confusion. H-D Michigan, Inc. v. Top Quality Serv., Inc., 496 F.3d 755, 759 (7th Cir. 2007); Packman v. Chicago Tribune Co., 267 F.3d 628, 638 (7th Cir. 2001). The first element requires a determination of whether a "word, term, name, symbol, or device" is entitled to protection. Trademarks are classified in categories of generally increasing distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992). Marks that are suggestive, arbitrary, or fanciful "are deemed inherently distinctive and are entitled to protection . . . . In contrast, generic marks—those that refer to the genus of which the particular product is a species—are not registrable as trademarks," and descriptive marks—those that are merely descriptive of a product—"are not inherently distinctive" but may acquire the distinctiveness, a "secondary meaning," that would allow them to be protected under the Act. Two Pesos v. Taco Cabana, 505 U.S. at 768-769. "When the identifying 'word, term, name, symbol or device' claimed as a trade name or mark is not registered with the United States Patent and Trademark Office, the burden is on the claimant . . . to establish that it is entitled to protection."

7

Platinum Home Mortgage Co. v. Platinum Fin. Group, Inc., 149 F.3d 722, 727 (7th Cir. 1998).

Citing to portions of the court's preliminary injunction order, Dr. Tavel claims he "previously established" that the "Vision Values" mark is suggestive and protectable. According to Dr. Tavel, "This is significant; suggestive marks are regarded as being 'inherently distinctive' and entitled to legal protection." He concludes that it "has been established as a matter of law that the mark is valid and entitled to legal protection." The court can't agree. Findings and conclusions in a preliminary injunction order aren't binding on the court at the summary judgment stage: "findings of fact and conclusions of law made at the preliminary injunction stage are often based on incomplete evidence and a hurried consideration of the issues; and . . . different standards apply in the two contexts (reasonable likelihood of success on an injunction, and the existence of any genuine issues of material fact on summary judgment)." Thomas & Betts Corp. v. Panduit Corp., 138 F.3d 277, 292 (7th Cir. 1998); *see also* Lac du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc., 991 F.2d 1249, 1258 (7th Cir. 1993) ("we have advised district courts to be cautious in adopting conclusions of law made in ruling on a preliminary injunction because the posture of the case at that time inevitably entails incomplete evidentiary materials and hurried consideration of the issues"); Highway J. Citizens Group, U.A. v. United States Dep't of Transp., No. 05-C-0212, 2009 WL 2983073, at *8 (E.D. Wis. Sept. 14, 2009) ("As a general rule, however, decisions on preliminary

injunctions do not constitute law of the case, and the parties are free to litigate the merits during later phases."). While Dr. Tavel is correct that "the use on summary judgment of evidence introduced at a hearing at an earlier stage in a case, such as one on preliminary injunction, should be more freely permitted," Reply, at 1, he has presented no citation to or analysis of evidence presented at the preliminary injunction hearing demonstrating that his mark is suggestive and protectable.

Dr. Tavel also says that his claim that the mark is suggestive is supported by the Patent and Trademark Office, which, he says, "agrees with the court that the mark is protectable." According to Dr. Tavel, because the PTO "required only a disclaimer of the word 'vision' and not both words . . . the PTO continues to support the court's findings relating to protectability of the mark." Memo., at 12-13. Vision Value responds that the PTO "never made any 'finding' regarding the 'protectability' of the mark 'Vision Values,' and . . . has certainly never seen or commented on this court's 'findings.'" Resp., at 8. In reply, Dr. Tavel reports that he filed an application for a word mark for "Vision Value$" and says "it is likely the word mark would have registered but for the opposition proceeding Vision Value initiated after the Notice of Publication." Reply, at 7. Dr. Tavel has submitted copies of the PTO's June 2, 2008 Office Actions relating to his applications for a work mark for "Vision Value$" and a design mark for "Vision Value$ by Dr. Tavel" (for which a registration was issued on March 24, 2009, *see* Pltf. Exh. 5). Dr. Tavel, though, hasn't explained how his application for registration of the mark

9

"Vision Value$" or the PTO documents upon which he relies establish that the mark here at issue, "Vision Values," is suggestive and protectable.[3]

Dr. Tavel has the burden of directing the court's attention to pertinent, admissible evidence that supports his claims. He hasn't done so. He merely says supporting evidence was presented "at the preliminary injunction hearing, all of which is a part of the record on summary judgment," without citation to the specific evidence upon which he relies. The transcript of the preliminary injunction is appended to Dr. Tavel's summary judgment motion as Exhibit 6, but the court isn't obligated to search through that transcript for relevant argument or evidence. *See* Estate of Moreland v. Dieter, 395 F.3d 747, 759 (7th Cir. 2005) ("We will not scour a record to locate evidence supporting a party's legal argument."); Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 898 (7th Cir. 2003) ("We have repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them."). Dr. Tavel's reliance on the text of the preliminary injunction order and the PTO's Office Actions, without more, doesn't establish as a matter of law that the "Vision Values" mark is protectable. Dr. Tavel hasn't identified any applicable Indiana statute(s) or carried his burden of establishing a prima facie case under the Lanham Act or applicable common law,

---

[3] Dr. Tavel claims the PTO "agrees with the court" that the mark is protectable, but he provides no citation to the applicable language in the documents he submits. The court reviewed the Office Action document relating to the "Vision Value$" mark and found that the PTO addressed the issue as follows: "the mark appears to be inherently distinctive." Pltf. Reply Exh. 1, p. 2.

so the court denies his request for summary judgment on the claims of his amended complaint and those of the counterclaim.

VISION VALUE'S MOTION

Vision Value maintains it is entitled to summary judgment on the claims of the amended complaint based on three arguments. Vision Value first says Dr. Tavel can't prevail on any claim relating to the "Vision Values" mark because Dr. Tavel abandoned any ownership rights he may have had in that mark in 1996 when he changed the name of his South Bend store from "Vision Values by Dr. Tavel" to "Dr. Tavel" and didn't begin using the mark again until after this suit was filed in 2007. Vision Value next says it couldn't have infringed the mark because its store is located in Mishawaka and Dr. Tavel's store is located in South Bend, two different geographic markets. Lastly, Vision Value says the term "Vision Value" has no secondary meaning because other optical companies use the term for optical-related goods and services.

Trademark rights are acquired and retained only through actual use of a mark. *See* Sands, Taylor & Wood Co. v. Quaker Oats Co., 978 F.2d 947, 954-955 (7th Cir. 1992) ("Because trademark rights derive from the use of a mark in commerce . . ., the owner of a mark will lose his exclusive rights if he fails actually to use it."). A trademark's nonuse may result in the mark being deemed abandoned if use of the mark "has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for

11

3 consecutive years shall be prima facie evidence of abandonment. 'Use' of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127; *see also* Cumulus Media, Inc. v. Clear Channel Communications, Inc., 304 F.3d 1167, 1173 (11th Cir. 2002) ("Abandonment is trademark law's way of recognizing that trademark rights flow from use."). A mark is used in commerce in connection with services "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." 15 U.S.C. § 1127.

Establishing abandonment, then, requires proof of two elements: nonuse of the mark and an intent not to reuse the mark. Zelinski v. Columbia 300, Inc., 335 F.3d 633, 639 (7th Cir. 2003); Sands, Taylor & Wood Co. v. Quaker Oats Co., 978 F.2d 947, 955 (7th Cir. 1992); Roulo v. Russ Berrie & Co., Inc., 886 F.2d 931, 938 (7th Cir. 1989). Three consecutive years of nonuse creates a presumption that the owner intended not to resume use of the mark. 15 U.S.C. § 1127. If the presumption is triggered, the owner of the mark "has the burden of producing evidence of either actual use during the relevant period or intent to resume use. The ultimate burden of proof (by a preponderance of the evidence) remains always on the challenger." Emergency One, Inc. v. American FireEagle, Ltd., 228 F.3d 531, 536 (4th Cir. 2000) (citations omitted); *see also* Roulo v. Russ Berrie & Co., 886 F.2d at 938 ("The trial judge properly instructed the jury that the defendant must prove by a preponderance of the evidence that plaintiff abandoned the . . . trade dress, that abandonment is found when use has been discontinued with

intent not to resume use, and that such intent may be presumed from nonuse for two consecutive years.").[4]

Vision Value contends Dr. Tavel isn't entitled to the relief he seeks because he abandoned his prior use of the "Vision Values" mark when he removed the mark from the name of his South Bend store in 1996 and ceased using it for another ten years. Vision Value says Dr. Tavel didn't begin using the mark again until sometime after April 2007, when he filed this lawsuit and changed the name of the South Bend store to "Vision Value$ by Dr. Tavel." Vision Value notes that the store's name change was formally announced in the South Bend Tribune in January 2008 as follows: "Dr. Tavel is now Vision Value$ by Dr. Tavel." Deft. Exh. AA. Vision Value cites to other evidence of Dr. Tavel's continuous nonuse:

– Deposition testimony by long-time Dr. Tavel employee Toni Kreps, who stated that the South Bend store hadn't operated under the name "Vision Values" since 1996, Kreps Dep., at 41; no signage using the name "Vision Values" had been used on or in the store since at least 2002, Kreps Dep., at 26, 35; she couldn't remember any promotional materials containing the "Vision Values" logo being used between January 2002 and January 2007, Kreps Dep., at 35; and most customers know the store as "Dr. Tavel," Kreps Dep., at 43-44.

---

[4] 15 U.S.C. § 1127 was amended in January 1996 to provide for a three-year, rather than a two-year, period of non-use that establishes a prima facie case of abandonment.

– Larry Tavel's deposition testimony that "Dr. Tavel" was the main name used by the South Bend store in September 2007, Tavel Dep., at 26-27.

– The South Bend/Michiana Yellow Pages contained no listing under Opticians for any store named "Vision Values" in 2006 or 2007, Deft. Exh. GG.

Vision Value argues that Dr. Tavel's listing of "Vision Values by Dr. Tavel" in the white pages of the area's telephone books is insufficient to establish actual "use" of the mark. Vision Value concludes that Dr. Tavel's period of nonuse of more than three years is prima facie evidence of abandonment.

To rebut the presumption of abandonment of the "Vision Values" mark, Dr. Tavel must produce "'evidence explaining the non-use or demonstrating the lack of an intent not to resume use.'" Zelinski v. Columbia 300, Inc., 335 F.3d 633, 639 (7th Cir. 2003) (*quoting* Sands, Taylor & Wood Co. v. Quaker Oats Co., 978 F.2d 947, 955 (7th Cir. 1992)). Dr. Tavel responds that even though his South Bend store stopped using "Vision Values" and became known as "Dr. Tavel One Hour Optical" in 1996, he used the mark continuously in the South Bend/Mishawaka phone directory. In support, Dr. Tavel cites to the court's preliminary injunction order and the listing of "Vision Values by Dr. Tavel" in the business white pages of the 2004-2005 "Best Book, Michiana & More," the May 2005 edition of the "SBC, Michiana Area" book, and the May 2006, May 2007, and May 2008 editions of the "AT&T, Michiana Area" book. *See* Pltf. Exh. 4 (to docket # 162). Dr. Tavel

says the mark is protectable in Indiana and Southern Michigan based on the reach of the telephone directories into numerous northern Indiana and southern Michigan communities. Dr. Tavel concludes that telephone directory listings are seen as "significant actual uses of trademarks" and, therefore, he never abandoned the mark "as a matter of law." Resp., at 10.

Viewing the evidence in the light most favorable to Dr. Tavel as the court must do at this stage of the proceedings, the court concludes that Dr. Tavel hasn't produced evidence sufficient to show "use" of the mark. "Use" means "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. "'[T]rademark rights are not created by sporadic, casual, and nominal shipments of goods bearing a mark. There must be a trade in the goods sold under the mark or at least an active and public attempt to establish such a trade.'" Allard Enterprises, Inc. v. Advanced Programming Resources, Inc., 146 F.3d 350, 359 (6th Cir. 1998) (*quoting* La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc., 495 F.2d 1265, 1274 (2d Cir. 1974)); *see also* Miyano Mach. USA, Inc. v. MiyanoHitec Mach. Inc., 576 F. Supp. 2d 868, 881-882 (N.D. Ill. 2008) ('Neither residual or token use nor mere promotional use on goods in a different course of trade constitute proper 'use' under the Lanham Act.").

Dr. Tavel relies on his telephone directory listing to establish his use of the mark. He points to five cases in which telephone listings were considered, but unlike Dr. Tavel's use of a white pages listing, the marks in the majority of those

15

cases were used in yellow page advertisements.[5] While the court can't agree with Vision Value that South Bend and Mishawaka are different markets, even if Dr. Tavel's telephone listing reached the entire Michiana area, the listing of a telephone number in the white page doesn't constitute the type of "bona fide use" the statute requires. *See* Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 363 (1991) ("The white pages do nothing more than list Rural's subscribers in alphabetical order."); DaimlerChrysler AG v. Bloom, 315 F.3d 932, 939 (8th Cir. 2003) ("We thus conclude that the licensing of a toll-free telephone number, without more, is not a "use" within the meaning of the Lanham Act, even where one possible alphanumeric translation of such number might spell-out a

---

[5] Dr. Tavel cites to the following cases, without comment or parenthetical explanation as to how they might be – or after closer examination might not be – applicable: Mini Maid Servs. Co. v. Maid Brigade Sys., Inc., 967 F.2d 1516, 1518-1519 (11th Cir. 1992) (telephone number at issue was advertised in yellow pages by one company as being its number when, in fact, the number had been purchased by another company with a similar name; no discussion of whether a telephone listing alone is sufficient to maintain a trademark); Synergistic Int'l, LLC v. Korman, No. 2:05-CV-49, 2007 WL 517677, at *9 (E.D. Va. Feb. 8, 2007) (telephone number at issue was contained in a yellow page advertisement; no discussion of whether a telephone listing alone is sufficient to maintain a trademark); Sleep Country USA, Inc. v. Northwest Pacific, Inc., No. C02-1923P, 2003 WL 23842534, at *6 (W.D. Wash. Oct. 10, 2003) ("The phone directory listing does not establish prior use because it is a bad-faith add-on use. A bad-faith add-on use is one where a party, knowing of another's plans to sell under a mark, rushes in to make a preemptive first [use]. . . . A bad-faith add-on use does not establish priority of use." No discussion of whether a telephone listing alone is sufficient to maintain a trademark.); Mayflower Transit, Inc. v. Ann Arbor Warehouse Co., Inc., 892 F. Supp. 1134, 1139 (S.D. Ind. 1995) (breach of contract case involving wrongful sale of five telephone numbers appearing in yellow page advertisements: "What makes control of the numbers so important is that they appear in the Yellow Pages under the Mayflower name and logo, thus enabling lesser known local agents to associate themselves with Mayflower's nationally-recognized name, service marks and reputation. Since White Pages listings are not as important in this respect as Yellow Pages listings, we find it unlikely that the parties would have intended for [the contract] to apply only to White Pages listings." No discussion of whether a telephone listing alone is sufficient to maintain a trademark.); American Airlines, Inc. v. A 1-800-A-M-E-R-I-C-A-N Corp., 622 F. Supp. 673, 675-676 (N.D. Ill. 1985) ("Because 1-800's wrongful conduct lies in its misleading use of the "Airline Companies" yellow-pages listing rather than its mere use of its telephone number . . ., it is difficult to conceive of its prevailing on the merits in the classical sense." No discussion of whether a telephone listing alone is sufficient to maintain a trademark.).

16

protected mark."); cf. Juno Online Servs., L.P. v. Juno Lighting, Inc., 979 F. Supp. 684, 691 (N.D. Ill. 1997) ("The mere 'warehousing' of the domain name is not enough to find that defendant placed the mark on goods or 'used or displayed [the mark] in the sale or advertising of services' as required [by] 15 U.S.C. § 1127.").

Dr. Tavel also claims he continued to use the mark in "other commercial media," Resp., at 9, but he has provided no support for that statement. He has submitted a copy of an advertisement he says appeared in the South Bend Tribune on several days in August 2006, Resp., Exh. 4, but that advertisement is for the "Dr. Tavel" store; the mark "Vision Values" doesn't appear in the advertisement. Dr. Tavel notes that Toni Kreps testified that she had no memory of the mark being used on promotional materials in the last five years, but he hasn't produced any promotional materials that made use of the "Vision Values" mark during that time. In fact, he says "[t]he electronic versions of certain South Bend advertisements do not use the mark until the September 2007 timeframe." Resp., at 5. Dr. Tavel hasn't produced evidence sufficient to rebut the presumption that from 1996 to 2007 he made no "bona fide use" of the "Vision Values" mark.

While Dr. Tavel hasn't produced evidence sufficient to establish his use of the mark, he still may refute the presumption of abandonment by producing evidence of intent to resume use of the mark. He hasn't done so. The court acknowledges that the South Bend store's name was changed to "Vision Value$ by Dr. Tavel," but Dr. Tavel took that action in late 2007, more than ten years

17

after he stopped using the mark and only after he filed suit in this court. *See* ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 149 n.9 (2d Cir. 2007) ("a mark holder's intent to resume use of the mark must be formulated during the three-year period of non-use"); PBI Performance Prods., Inc. v. Norfab Corp., 514 F. Supp. 2d 725, 729 n.3 (E.D. Pa. 2007) ("The filing of a lawsuit . . . is only an indication that the plaintiff intends to protect its rights to the trademark, not that the plaintiff intends to resume use of the mark."). Dr. Tavel hasn't alleged, argued, or produced evidence that he was or had been considering resuming use of the mark, that he was or had been making arrangements to resume use of the mark, or that he had any intention to resume using the mark "within the reasonably foreseeable future" or at all. Emergency One, Inc. v. American FireEagle, Ltd., 228 F.3d 531, 537 (4th Cir. 2000); Roulo v. Russ Berrie & Co., Inc., 886 F.2d 931, 938-939 (7th Cir. 1989). "Rather, an intent to resume use of the mark can only come from evidence that shows a genuine and substantial consideration of a business idea where use of the mark would be resumed." Warren Publishing Co. v. Spurlock, No. 08-3399, 2009 WL 2412542, at *33 (E.D. Pa. Aug. 4, 2009). Dr. Tavel has presented no such evidence.

Vision Value set forth evidence demonstrating that Dr. Tavel hadn't used the "Vision Values" mark for at least three years prior to 2007, and Dr. Tavel didn't rebut the presumption of abandonment by presenting evidence sufficient to explain his non-use or to demonstrate his intent to resume use of the mark. Zelinski v. Columbia 300, Inc., 335 F.3d 633, 639 (7th Cir. 2003); Roulo v. Russ

18

Berrie & Co., 886 F.2d at 938. Because the evidence establishes that Dr. Tavel had abandoned his use of the "Vision Values" mark when he filed suit in 2007, Vision Value is entitled to judgment on the claims of Dr. Tavel's amended complaint. *See* Cumulus Media, Inc. v. Clear Channel Communications, Inc., 304 F.3d 1167, 1173 (11th Cir. 2002) ("Thus, a defendant who successfully shows that a trademark plaintiff has abandoned a mark is free to use the mark without liability to the plaintiff."). That judgment, though, doesn't automatically result in judgment for Vision Value on its counterclaim; Vision Value still has the burden of establishing its own entitlement to judgment. *See* Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 137 n.9 (1997) ("The burden of showing something by a preponderance of evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence." (*quoting* Concrete Pipe & Prods. of California, Inc. v. Construction Laborers Pension Trust for So. California, 508 U.S. 602, 622 (1993)). Vision Value hasn't presented argument or legal support for its request for judgment on its counterclaim and that portion of its summary judgment motion is denied.

CONCLUSION

Based on the foregoing, the court

(1) DENIES the defendant's objections to the plaintiff's designation of evidence [docket # 169];

19

(2) DENIES the plaintiff's motion to strike the defendant's objections to plaintiff's evidence [docket # 175];

(3) DENIES the plaintiff's motion for summary judgment [docket # 161];

(4) GRANTS in part and DENIES in part the defendant's motion for summary judgment [docket # 159] as follows:

(a) the motion is GRANTED with respect to the defendant's request for judgment on the claims of the plaintiff's amended complaint, and

(b) the motion is DENIED with respect to the defendant's motion for judgment on its counterclaim;

(5) DENIES the parties' joint motion for continuance of pretrial deadlines [docket # 180].

This cause remains at issue on the defendant's counterclaim, and the final pretrial conference remains scheduled for November 17, 2009 at 1:00 p.m.

SO ORDERED.

ENTERED:   November 3, 2009

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court